[Cite as *State ex rel. Jones v. Dayton Pub. Schools Bd. of Edn.*, 2018-Ohio-676.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel. CRAIG A. JONES, et al. | : |
| | : |
| | :    Appellate Case No. 27649 |
| *Plaintiffs-Appellants* | : |
| | :    Trial Court Case No. 2016-CV-4132 |
| v. | : |
| | :    (Civil Appeal from |
| BOARD OF EDUCATION OF THE | :    Common Pleas Court) |
| DAYTON PUBLIC SCHOOLS | : |
| | : |
| *Defendant-Appellee* | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of February, 2018.

. . . . . . . . . . .

DENNIS L. PERGRAM, Atty. Reg. No. 0010853, 50 North Sandusky Street, Delaware, Ohio 43015
      Attorney for Plaintiffs-Appellants

BRIAN L. WILDERMUTH, Atty. Reg. No. 0066303, LAUREN K. EPPERLEY, Atty. Reg. No. 0082924, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
      Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} This case is before us on the appeal of Plaintiff-Appellant, Craig Jones, from a judgment rendered in favor of Defendant-Appellee, Board of Education of the Dayton Public Schools ("Board").[1]  Jones contends that the trial court erred in finding that the Board complied with R.C. 3313.16, R.C. 121.22, and Board Policy BDDA when it refused to renew his contract.   According to Jones, the nonrenewal of his contract exceeded the scope of the purpose set forth in the Board's special meeting notice, and was invalid.

{¶ 2} In addition, Jones contends that the trial court erred in failing to grant summary judgment in his favor on the issue of the Board's violation of R.C. 121.22(G), and in failing to require the Board to strictly comply with R.C. 3313.16.

{¶ 3} We conclude that the Board's special meeting notice failed to comply with R.C. 121.22(F), because the Board failed to properly state the purpose of the open session of the meeting.   The Board's resolution not to renew Jones' contract, therefore, was invalid, and the trial court erred in rendering summary judgment in the Board's favor.

{¶ 4} Although the Board also failed to comply with certain requirements of R.C. 3313.16 when it sent out the notice for the special meeting, the trial court did not err in finding a lack of prejudice, because Jones had actual notice of the meeting.   In addition, the Board's motion to go into executive session facially complied with R.C. 121.22(G)(1). Whether the Board improperly disguised its intentions in calling the meeting and in moving into executive session do not need to be considered, due to the invalidity of the resolution adopted at the special meeting.   Accordingly, the judgment of the trial court will be

---

[1] Craig Jones brought the lower court action as a plaintiff-relator on behalf of the State of Ohio and as a plaintiff on his own behalf.   For purposes of convenience, we will refer to both parties simply as "Jones."

reversed, and this cause will be remanded for further proceedings.

## I. Facts and Course of Proceedings

{¶ 5} The facts in the case before us were largely stipulated and are not disputed. On May 7, 2013, Craig Jones and the Board entered into an employment contract, pursuant to which the Board employed Jones as Treasurer for the Dayton City School District ("DCSD") for a period of three years. The contract began on August 1, 2013, and was to last until July 31, 2016, unless terminated earlier by the parties' mutual agreement, by Jones' retirement, disability, or death, by a majority vote of the Board, or by Jones' failure to maintain a valid license as statutorily required.

{¶ 6} Under the contract, Jones acted as financial advisor to the Board and the Board's administration on matters pertaining to DCSD, and was to advise the Board on any actions taken on the Board's behalf. Ex. A to the complaint, p. 2.[2]

{¶ 7} Concerning employment of treasurers, R.C. 3313.22(A) provides that:

At the expiration of a treasurer's current term of employment, the treasurer is deemed re-employed for a term of one year at the same salary plus any increments that the board may authorize, unless the board, on or before the first day of March of the year in which the contract of employment expires, either re-employs the treasurer for a succeeding term as provided in division (C) of this section or gives to the treasurer written notice of its

---

[2] All the documents and exhibits referenced in this opinion were either the subject of stipulations or were properly authenticated by affidavits. For example, Ex. A attached to the complaint was admitted into evidence pursuant to the parties' stipulation. *See* Doc. #16, Stipulations, No. 1.

intention not to re-employ the treasurer.

{¶ 8} The Board did not terminate Jones' employment; instead, the Board held a special meeting on February 23, 2016, and voted not to renew his contract. At the same meeting, the Board also voted not to renew the contract of the DCSD Superintendent. The Board notified Jones in writing of the non-renewal on February 25, 2016.

{¶ 9} On September 9, 2016, Jones filed a complaint seeking both a declaratory judgment and a writ of mandamus against the Board. In the first claim for relief, Jones asked for a declaration that he was entitled to be re-employed by the Board under a one-year contract for 2016-2017, due to the Board's failure to comply with statutory requirements and the Board's own policies pertaining to scheduling special meetings. The second claim for relief alleged that the Board's special meeting notice failed to comply with R.C. 121.22, and that actions taken at the February 23, 2016 Board meeting were invalid. Finally, the third claim for relief asserted that Jones was a public official and that the Board's executive session on February 23, 2016, was unlawful because the Board's special meeting notice stated that the purpose of the executive session was to consider "employment of public employees," rather than to consider the employment of a public official.

{¶ 10} After the Board filed its answer, the trial court set a schedule for filing stipulations, briefs, and reply briefs. For the most part, the parties were able to agree on the facts, and filed stipulations on January 30, 2017. The briefing concluded on February 13, 2017. Subsequently, on June 27, 2017, the trial court rendered summary judgment in the Board's favor.

{¶ 11} The court rejected Jones' arguments about defects in the Board's procedure

for calling a special meeting under R.C. 3313.16, because Jones had "actual knowledge" of the special meeting.   In addition, the court concluded that the Board's notice of the special meeting did not violate R.C. 121.22(F).   And finally, the court held that even if the court "humored" Jones by referring to him as a "public official," the definition of public official included employees; as a result, Jones' "argument asserted a distinction without a difference."   Doc. # 23, p. 8.

{¶ 12} Jones now appeals from the court's decision rendering summary judgment in the Board's favor and overruling Jones' motion for summary judgment.

## II. The Special Meeting Notice

{¶ 13} Jones' First Assignment of Error states that:

The Trial Court Committed Prejudicial Error by Finding That the Board Complied With Ohio Rev. Code § 3313.16, Ohio Rev. Code § 121.22, and Board Policy BDDA[,] and Erred by Not Granting Summary Judgment as to Liability for Mr. Jones Because the Board's Nonrenewal of Mr. Jones's Contract Exceeded the Scope of the "Purpose" Set Forth in the Special Meeting Notice (Trial Court's Order).

{¶ 14} Under this assignment of error, Jones contends that the Board failed to comply with statutory requirements under R.C. 3313.16 and R.C. 121.22(F), and with its own Board policy concerning special meetings.   Jones notes that the special meeting notice did not indicate that the Board would be voting on Jones' contract; instead, the notice misinformed the public that the Board may act on recommendations of the superintendent and/or treasurer when, in fact, no recommendations were going to be

made and the Board knew that. Additionally, Jones argues that the Board disguised the purpose of the special meeting by omitting any mention of possible non-renewal, and then retroactively revised the agenda the following day (February 24, 2016) to reflect the non-renewal of the contracts of Jones and the superintendent.

{¶ 15} According to Jones, the trial court erred by failing to recognize the purpose of a special meeting notice, and further erred by concluding that such purpose was satisfied by a notice indicating that the Board would go into executive session to consider the employment of public employees.

{¶ 16} We noted in the statement of facts that R.C. 3313.22(A) states that "[a]t the expiration of a treasurer's current term of employment, the treasurer is deemed re-employed for a term of one year at the same salary plus any increments that the board may authorize, unless the board, on or before the first day of March of the year in which the contract of employment expires, either re-employs the treasurer for a succeeding term as provided in division (C) of this section or gives to the treasurer written notice of its intention not to re-employ the treasurer."   R.C. 3313.22(D) further states that:

> Each board shall adopt procedures for the evaluation of its treasurer and shall evaluate its treasurer in accordance with those procedures. The board shall consider an evaluation based upon those procedures in deciding whether to renew the treasurer's contract.   The establishment of an evaluation procedure shall not create an expectancy of continued employment.   Nothing in this division shall prevent a board from making the final determination regarding the renewal or nonrenewal of a treasurer's contract.

{¶ 17} If a treasurer's contract is terminated, R.C. 3313.22(E) indicates that termination shall be in accordance with R.C. 3319.16, which pertains to termination for cause of teaching and non-teaching employees. Of course, here, Jones was not terminated; instead, his contract was not renewed.

{¶ 18} "[T]he appropriate procedural vehicle for a school administrator to seek reemployment, damages, and back pay for the nonrenewal of his or her employment contract is a petition for a writ of mandamus." (Citations omitted.) *State ex rel. Jones v. Sandusky City Schools*, 6th Dist. Erie No. E-05-041, 2006-Ohio-188, ¶ 7. "In order for a writ of mandamus to issue, a relator must demonstrate that (1) he or she has a clear legal right to the relief prayed for; (2) respondent is under a corresponding legal duty to perform the requested act; and (3) relator has no plain and adequate legal remedy." (Citations omitted.) *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 218-219, 631 N.E.2d 150 (1994).

{¶ 19} As was noted, this case was decided on cross motions for summary judgment. "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172

Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 20} In the statement of facts, we noted that the Board could have terminated Jones' contract based on the provisions in the contract, or it could have chosen nonrenewal under R.C. 3313.22(A), by giving written notice to Jones prior to March 1, 2016. Failure to provide written notice would have resulted in automatic renewal for another year. The Board chose the latter course, and called a special meeting at which it adopted a nonrenewal resolution. The Board then notified Jones of the nonrenewal.

{¶ 21} Concerning special meetings, R.C. 3313.16 provides that:

A special meeting of a board of education may be called by the president or treasurer thereof or by any two members, by serving a written notice of the time and place of such meeting upon each member of the board at least two days prior to the date of such meeting. Such notice must be signed by the official or members calling the meeting. For the purpose of this section, service by mail is good service.

{¶ 22} DCSD has adopted its own policies regarding special meetings and notification requirements. Board policy BDDA is entitled "Notification of Meetings," and provides that:

Due notice of all meetings of the Board and Board-appointed committees is given to the press and the public who have requested notification and to all Board members. Any person may learn the time and place of regularly scheduled meetings and the time and place and purpose of special meetings by calling the District's administrative offices or accessing the District's web site or television station.

\* \* \*

Special Meetings: A special meeting may be called by the President, the Treasurer, or any two members of the Board by serving written notice of the time and place of the meeting upon each Board member at least two days before the date of the meeting. The notice must be signed by the officer or members calling the meeting. Notice by mail is authorized. Notice of the time, place and purpose must also be given at least 24 hours in advance of the meeting to all news media and individuals who have requested such notice.

Ex. B attached to the Complaint, p. 1; Doc. #16, Stipulations at No. 2.

{¶ 23} In the case before us, it is clear that the Board failed to comply with statutory requirements and with its own policy. Notice of a special meeting to be held on February 23, 2016, was emailed to various individuals on February 11, 2016, by Cherisse Kidd, who was not the Board president or a Board member, nor was she the DCSD treasurer. Instead, Kidd handled administrative duties for the Board. The email from Kidd stated that "*I hereby call* for a special meeting of the Board of Education of the City of Dayton School District * * * to be held on Tuesday, February 23, 2016 * * * ." (Emphasis added.) Doc. #16, Stipulations at No. 3, and Ex. C-1 attached to the Stipulations. Thus, the undisputed evidence indicates that the individual calling the meeting was Kidd, who was not a proper party under either R.C. 3313.16 or the Board's own policy.

{¶ 24} Kidd's affidavit indicated that her routine practice was to call Board members about special meetings, and that she followed her routine practice on February 23, 2016, although she actually had no particular recollection of how she was asked to do this.

Doc. #18, Kidd Affidavit, ¶ 3-4 and 9.    Kidd also stated that the Board president's routine practice was to notify her of the time, place, and purpose of Board meetings so that she could send a special Board meeting notice.    *Id.* at ¶ 7.    However, regardless of "routine" practices, the fact is that the email did not comply with either R.C. 3313.16 or Board policy.

{¶ 25} The email was also not sent to two Board members, John McManus and Ronald Lee.    McManus did attend the February 23, 2016 special meeting, so he apparently received some type of notice (although that is not addressed in the record). Lee did not attend; however, Lee stated in an affidavit that he was aware of the meeting and had a conflicting personal appointment.    Doc. #18, Lee Affidavit, ¶ 6-7.    Again, these failures indicate that the special meeting notice did not comply with R.C. 3313.16 or the Board's own policy.

{¶ 26} Kidd's email was sent on February 11, 2016, and included an attached document dated February 19, 2016.    The document was labeled "F.Y.I." and "Special Meeting."    Doc. #16, Stipulations at No. 3, and Ex. C-2 attached to the Stipulations.    The letterhead of this document stated "Dayton Board of Education," and included the names of the President, Vice-President, and all Board Members.    In the trial court, the Board argued that this constituted compliance with the statute and policy.    Clearly, it did not. Both the statute and Board policy require that the notice *be signed* by the officer or members calling the meeting.    The fact that the Board president's name is on a letterhead does not constitute a "signature."    Several other names are on the letterhead, including, as Jones points out, the Board's vice-president, who did not have the authority to call meetings.    Again, while these are technical defects, the fact is that the Board did not comply with R.C. 3113.16 or its own policy.

**{¶ 27}** In discussing situations involving lack of compliance with R.C. 3313.16, some courts have applied a "substantial compliance" analysis or have considered whether the failure prejudiced the substantial rights of a party. *See Stuble v. Bd. of Education of the Cuyahoga Valley Joint Vocational School Dist.*, 8th Dist. Cuyahoga No. 44412, 1982 WL 5953, *4-5 (Oct. 7, 1982) (concluding that prejudice cannot be found if mandatory statutory requirements were substantially satisfied), and *Wolf v. E. Liverpool School Dist. Bd. of Ed.*, 7th Dist. Columbiana No. 03 CO 5, 2004-Ohio-2479, ¶ 30 (lack of written notice under R.C. 3313.16 did not prejudice substantial rights of school board member because he received actual notice of a special meeting). One court of appeals did not disagree with a trial court that a school board's action was null and void due to a failure to comply with the notice requirements of R.C. 3313.16. *See Migra v. Warren City School Dist. Bd. of Roucation* [sic], 11th Dist. Trumbull No. 3048, 1982 WL 5776, *1-2 (June 4, 1982). However, the appellate court's decision appears to have been based more on deference to the trial court's factual findings. *Id.* at *2.

**{¶ 28}** The appellate decision in *Migra* is unclear, and we agree with other cases that have applied either a "substantial compliance" or a "prejudice to a substantial right" analysis. R.C. 3313.16 does not specify that technical failures invalidate a board's action, and we see no reason to engraft such a requirement where, as here, the complaining party received actual notice of the special meeting. Thus, to this extent, we agree with the trial court's conclusion about the fact that Jones had actual notice of the meeting. Because Jones had actual notice, he was not prejudiced by the Board's lack of compliance with R.C. 3313.16.

**{¶ 29}** The analysis pertaining to alleged violations of R.C. 121.22 (Ohio's

"Sunshine Law") differs, however, from evaluation of violations of R.C. 3313.16. R.C. 121.22(A) provides that R.C. 121.22 "shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." School boards are included within the definition of "public bodies" for purposes of the statute. R.C. 121.22(B)(1)(a).

{¶ 30} R.C. 121.22(C) further provides that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." In addition, R.C. 121.22(F) states that public bodies "by rule, shall establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings." Consistent with this rule, Board policy BDDA indicated that a person could learn of the "time, place, and purpose" of special meetings by accessing DCSD's website.

{¶ 31} As pertinent here, R.C. 121.22(G) provides that:

* * * [T]he members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:

(1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, * * * unless the public employee, official, licensee, or regulated individual requests a public hearing. Except as otherwise provided by law, no public body shall hold an executive session for the discipline of an elected official

for conduct related to the performance of the elected official's official duties or for the elected official's removal from office. If a public body holds an executive session pursuant to division (G)(1) of this section, the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in division (G)(1) of this section are the purposes for which the executive session is to be held, but need not include the name of any person to be considered at the meeting.

{¶ 32} Like R.C. 121.22(G), Board Policy BDC ("Executive Sessions") lists matters that may be discussed in executive session. These include "the appointment, employment, dismissal, discipline, demotion or compensation of an employee, official or student or the investigation of charges against such individual, unless an employee, official or student requests a public hearing * * *." (Emphasis added.) Doc. #16, Stipulations at No. 13, and Ex. K attached to the Stipulations. The policy further states that:

When the Board holds an executive session for any of the reasons stated above, the motion and vote to hold the executive session shall state one or more of the purposes listed under such paragraph for which the executive session is to be held, but need not include the name of any person to be considered in the executive session. The minutes shall reflect the information described above.

In compliance with law, no official action may be taken in executive session. To take final action on any matter discussed, the Board reconvenes into public session.

Board Policy BDC at p. 2.

{¶ 33} Of further pertinence is R.C. 121.22(H), which states that:

A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body. A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) or (J) of this section and conducted at an executive session held in compliance with this section. A resolution, rule, or formal action adopted in an open meeting is invalid if the public body that adopted the resolution, rule, or formal action violated division (F) of this section.

{¶ 34} Under R.C. 121.22(I)(1), "[u]pon proof of a violation or threated violation [of R.C. 121.22,] * * * the common pleas court shall issue an injunction to compel the members of the public body to comply with its provisions." R.C. 121.22(I)(3) additionally states that "[i]rreparable harm and prejudice to the party that sought the injunction shall be conclusively and irrebuttably presumed upon proof of a violation or threatened violation of this section." Consequently, in contrast to R.C. 3313.16, a "substantial compliance" or lack of substantial prejudice analysis would not be appropriate.

{¶ 35} According to Jones, the Board violated Ohio's Sunshine Law and its own policies by exceeding the stated purpose of the special meeting, by failing to reveal that the Board would be considering or voting on Jones' contract in the special meeting, and by disguising the purpose of the special meeting when it omitted from the agenda any reference to the non-renewal of his contract. Furthermore, Jones contends that the

Board improperly retroactively amended the agenda by adding the non-renewal resolutions as agenda items, while maintaining the prior date used for the original agenda.[3]   Jones also argues that the Board exceeded the purpose of the special meeting because it did more than go into executive session to consider employment; instead, it passed a resolution to non-renew Jones' contract.

{¶ 36} In responding to these arguments, the Board contends that Jones did not have the right to know that the purpose of the special meeting was to discuss non-renewal.   The Board also notes that R.C. 121.22(G)(1) explicitly states that a public body does not have to include the name of any person to be considered at a special meeting. As a result, the Board contends that requiring it to specifically state that it was considering non-renewal of the treasurer's contract would violate its right to discuss Jones' employment in executive session without identifying him by name.

{¶ 37} Moreover, the Board argues that the notice was not invalidated by the addition of language indicating that the Board may act on recommendations of the superintendent and/or treasurer at the meeting.   According to the Board, this language appears in many Board special meeting notices, and simply left the Board with the option to act on any such recommendations, which did not occur.   In addition, the Board argues that it did not exceed the purpose of the special meeting notice because the non-renewal resolution was not "wholly unrelated" to the stated purpose in the notice.

{¶ 38} The trial court did not address most of these points, including the alleged misleading nature of the notice and agenda.   Instead, the court simply concluded that a

---

[3] The Board argued on appeal that modification of the agenda was required due to a computer program that the Board uses.   No evidence establishing such a fact was presented in the trial court.

general statement that the Board would consider employment of a public employee was sufficient.

{¶ 39} The special meeting notice that was sent by email stated, in pertinent part, that:

> In accordance with Section 3313.16 * * *, I hereby call for a special meeting of the Board of Education * * * to be held on Tuesday, February 23, 2016 * * *.
>
> Immediately after convening, the board will go into executive session to consider the employment of public employees.
>
> *Once they have reconvened in public session, the board may decide to act on recommendations from the superintendent and/or treasurer at this meeting.*
>
> The media is being advised of this meeting in compliance with the Ohio Sunshine Law.

(Emphasis added.) Doc. # 16, Stipulations at No. 3, and Ex. C-1 attached to the Stipulations. The "FYI" letter that was attached to the email contained the same content.

{¶ 40} The Board policy on "Agenda Preparation and Dissemination" states that "[t]he Superintendent, working with the Board President, coordinates the agenda for all Board meetings." Doc. # 16, Stipulations at No. 5, and Ex. D (Board Policy BDDC) attached to the Stipulations. An agenda that did not mention nonrenewals of contracts was available online prior to the February 23, 2016 special meeting. Doc. #18, Kidd Affidavit, ¶ 10. The record does not indicate whether the superintendent coordinated with the Board president on the agenda; logically, this seems unlikely, since the Board

president intended to discuss nonrenewal of the superintendent's contract. The day after the meeting, Kidd edited the agenda to add sections about the nonrenewal resolutions. *Id.*

{¶ 41} The February 23, 2016 Board meeting minutes indicate that the Board president moved to go into executive session to consider the employment of public employees, that the motion was seconded, and that the motion carried. Doc. # 16, Stipulations at No. 9, and Ex. G attached to the Stipulations.[4] The next thing that occurred, according to the minutes, was an oral statement by the Board president that "Let the record show that the Board of Education * * * has just completed an Executive Session during which it considered the employment of public employees." *Id.* at Ex. G, p. 2. Two resolutions were then passed – one voting not to renew the superintendent's contract, and the other voting not to renew the treasurer's (Jones') contract. *Id.* The record does not reveal what matters were discussed during the executive session.

{¶ 42} The "special meeting" was convened at 5:50 p.m., and the executive session began at 5:55. *Id.* at Ex. G, p. 1. At 8:00 p.m., the executive session ended, and the two resolutions were passed. In contrast to a motion to adopt the 2016-2017 school calendar that was considered thereafter, there is no indication that any discussion of the nonrenewal resolutions took place. *Id.* at pp. 1-2.[5] The meeting was adjourned at 8:42 p.m. *Id.* at p. 2.

{¶ 43} In *Jones v. Brookfield Twp. Trustees*, 11th Dist. Trumbull No. 92-T-4692,

---

[4] The Stipulations refer to the minutes of the Board meeting as Ex. F, but the minutes are labeled Ex. G.

[5] The special meeting notice did not mention the 2016-2017 school calendar.

1995 WL 411842 (June 30, 1995), the court discussed R.C. 121.22(F), which requires public bodies to give notice concerning regular and special meetings. In this regard, the court stated that:

> The first sentence of [R.C. 121.22(F)] states that as compared to the notice of a regular meeting, the notice of the special meeting must be sufficient for a person to determine the purpose of the meeting. The second sentence merely states that this notice must be given to the news media which have requested notification, at least twenty-four hours prior to the special meeting.
>
> As to this point, this court would note that, in giving notice of a general meeting, a public body is not required to state the meeting's purpose. This distinction is obviously predicated upon the fact that such a meeting is not being held for any specific reason, but instead is being held because it is a regularly scheduled meeting. In contrast, the use of the term "special meeting" implies that such a meeting can only be held when there are specific reasons for holding it. Given the existence of such a reason, it follows that the notice of a special meeting must refer to those specific reasons, and that those specific issues are the only ones which can be addressed at such a meeting.

*Jones* at *6.

{¶ 44} The court in *Jones* went on to note that the wording of R.C. 121.22(F) did not require special meetings to consider only one specific issue; instead, a special meeting could be held for general purposes, "*if that is the actual reason for the meeting.*"

(Emphasis added.) *Id.* at *7. Due to testimony that the media had been told a special meeting was for general purposes, the court concluded that "police personnel matters" was a proper topic of discussion at the special meeting of a board of township trustees, and that the notice was not deficient. *Id.*

{¶ 45} However, the court also concluded that the board had violated the notice requirements in R.C. 121.22(G)(1) by moving and voting to hold an executive session to discuss "police personnel matters." *Jones*, 11th Dist. Trumbull No. 92-T-4692, 1995 WL 411842, at *2-3. The basis for this holding was that under R.C. 121.22(G)(1), "the motion to hold an executive session must refer to one of the purposes stated in the division itself. These include the dismissal or demotion of a public employee. Accordingly, a reference to 'police personnel issues' does not technically satisfy this requirement because it does not specify which of the approved purposes was applicable in this instance." *Id.* at *3. The court noted that the statement about personnel matters was so broad as to refer to any of the stated purposes in R.C. 121.22(G)(1), and such a use would render the statute's express notice requirement meaningless. *Id.*

{¶ 46} Ultimately, the court held that the board, which was the appellant, was estopped from attempting to invalidate the action of a prior board that consisted of some different board members, because doing so would allow the board to profit from its own violation. *Id.* at *3-5.

{¶ 47} The case before us presents the opposite situation, in which the notice of the special meeting did not specify any purpose that would be discussed in open session at the meeting. Instead, the notice stated only that "[o]nce they have reconvened, the board may decide to act on recommendations from the superintendent and/or treasurer

at the meeting." Doc. #16, Stipulations at No. 3 and Ex. C-1 attached to the Stipulations.

**{¶ 48}** As a result, the notice failed to comply with R.C. 121.22(F). However, the notice did comply with R.C. 121.22(G)(1), with respect to the executive session, by specifying that the board would go into executive session to consider employment of public employees.

**{¶ 49}** "R.C. 121.22 requires public bodies in Ohio to take official action and conduct all deliberations on official business only in open meetings where the public can attend and observe such deliberations. Public bodies must provide advance notice to the public, indicating where and when the meetings will occur and, in the case of special meetings, state the specific topics the body will discuss." *Keystone Commt. v. Switzerland of Ohio Sch. Dist. Bd. of Edn.*, 2016-Ohio-4663, 67 N.E.3d 1, ¶ 24 (7th Dist.), citing R.C. 121.22(F). "An executive session is a closed-door conference convened by a public body, after a roll call vote, that is attended by only the members of the public body (and those they invite), that excludes the public." *Id.* at ¶ 25, citing R.C. 121.22(G).

**{¶ 50}** In *Keystone*, the court held that a board of education had violated the notice requirements of R.C. 121.22(F) "by exceeding the scope of the noticed purpose" of a special meeting. *Id.* at ¶ 36. The court stated that:

> The Board correctly argues that a special meeting can be held for more than one purpose. However, the stated purpose must conform to the actual subject matter of the meeting so as to give the public actual notice. *Jones, supra*[,11th Dist. Trumbull No. 92-T-4692, 1995 WL 411842]. In the case *sub judice*, the special meeting was called by the Board president at the behest of Mr. Winkler, who testified that he wanted the Beallsville matter

to be "settled." The treasurer testified that closure of this school was the only matter discussed and the Board voted to pass a resolution to close Beallsville High School at the meeting. Thus, the Board and its agents knew the meeting was about a very specific topic: the closing of Beallsville High School. The stated purpose in the notice of the special meeting, "[t]o discuss the 2015–2016 school year," did not serve to inform the public of the true purpose of the meeting. As the notice did not provide the specific subject matter of the meeting, the Board violated R.C. 121.22(F). Pursuant to R.C. 121.22(H), any formal action taken by a public body in a meeting for which it did not properly give notice is invalid.

*Keystone* at ¶ 36.

**{¶ 51}** Likewise, in the case before us, the notice of the special meeting did not inform the public of the true purpose of the meeting. As in *Keystone*, the Board knew the meeting was about a specific topic, but the public did not receive information about the meeting's actual purpose. In fact, the special meeting notice failed to state any purpose for the open session. To the extent that any purpose could be inferred from the statement that the Board might act on recommendations of the superintendent and treasurer, the comment in the notice was not true.

**{¶ 52}** Both the trial court and the Board have relied on *Warthman v. Genoa Twp. Bd. of Trustees*, 5th Dist. Delaware No. 10CAH040034, 2011-Ohio-1775, in which the court of appeals concluded that notices of special meetings of a township board of trustees considering termination of a zoning inspector were sufficient because "they provided notice the special meetings were being held to discuss personnel issues." *Id.*

at ¶ 120.

{¶ 53} *Warthman* is distinguishable, however. The content of the special meeting notices specifically stated that the purpose of the meetings was to discuss " 'personnel matters.' " *Id.* at ¶ 107. Here, no purpose was stated concerning the purpose for the open session.

{¶ 54} In the case before us, the trial court concluded that "the notice stated the purpose for the meeting was for 'the board to go into executive session to consider the employment of public employees' and that is exactly what it did." Doc. #23, Order Granting Defendant's Motion For Summary Judgment and Overruling Plaintiff's Motion for Summary Judgment, p. 7.

{¶ 55} In comparing the above cases, the situation here is more factually akin to *Keystone.* The Board's notice did not state a particular purpose that was to be discussed during open session, and therefore, the public was not informed about the meeting's true purpose. As was noted, to the extent any purpose for the open session was stated, it was that "[o]nce they [the Board members] have reconvened in public session, the board may decide to act on recommendations from the superintendent and/or treasurer at this meeting." Doc. # 16, Stipulations at No. 3, and Ex. C-1 attached to the Stipulations.

{¶ 56} In fact, the true purpose for the meeting was other than stated, as the Board president knew that the Board was not going to consider recommendations of the superintendent or treasurer with respect to public employees. Considering any such recommendations was obviously not contemplated, since the Board intended to consider these employees' own contracts. The superintendent or treasurer would hardly have recommended nonrenewal of their own contracts. Furthermore, the Board president

knew prior to the issuance of the notice that the meeting's purpose was to discuss nonrenewal of the contracts of the treasurer and superintendent. Doc. #18, Affidavit of Dr. Adil T. Baguirov, ¶ 5.

{¶ 57} The Board President's knowledge and intent shed some light on the circumstances of this case but they are not determinative. The ultimate issue regarding the Ohio Sunshine Law is resolved by whether the resolution to nonrenew Jones' contract exceeded the scope of the purpose stated in the notice.

{¶ 58} Baguirov had also told Jones in early February 2016 that he would invite Jones to attend any future special meeting or executive sessions if Jones were needed. Doc. # 16, Stipulations at No. 14 and 16, and Ex. L, p. 4 and Ex. M, p. 2 attached to the Stipulations. However, Baguirov did not invite Jones to the February 23, 2016 special meeting or executive session. A logical assumption from this would have been that the special meeting or executive session had nothing to do with Jones.

{¶ 59} The Board argues that the "recommendations" language was of no consequence because it was often inserted in notices. As an initial point, no witness in the trial court made such a statement. Kidd's affidavit merely identified some attached meeting notices, and indicated that the Board held 17 special meetings in 2016.

{¶ 60} The fact that language about recommendations was included in some other notices is irrelevant for purposes of the present case. As was noted, the Board president knew when the special meetings notice was issued that the Board would not be considering the recommendations of the superintendent or treasurer at the special meeting.

{¶ 61} In *State ex rel. Stiller v. Columbiana Exempted Village School Dist. Bd. of*

*Edn.,* 74 Ohio St.3d 113, 656 N.E.2d 679 (1995), the Supreme Court of Ohio considered arguments of a superintendent that a school board failed to comply with R.C. 121.22(F) when it provided notice of a special meeting to be held " 'to vote on the Superintendent's contract.' "   *Id.* at 118.   According to the superintendent, this notice was defective because it did not also include anything about considering the adoption of the board's prior evaluation of the superintendent.   *Id.*

{¶ 62} The Supreme Court of Ohio noted that the court of appeals had found this argument without merit, because a later agenda for the special meeting included consideration of both items.   According to the Supreme Court, there were issues of fact concerning whether the agenda was the notice specified by R.C. 121.22(F) and the board's own policy.   *Id.* at 118-119.   Nonetheless, the court found this factual issue immaterial for purposes of summary judgment, based on the existence of the earlier special meeting notice.   The court observed that R.C. 121.22(F) required only that the notice state the "purpose" of the special meeting, which was to vote on the superintendent's contract.   *Id.* at 119.

{¶ 63} The court further commented that the board's own policy, "which [the superintendent] claims entitles him to the earlier notice of nonrenewal, specifically ties the board's evaluation process to its decision to nonrenew the superintendent's contract. Therefore, voting on the adoption of a superintendent's evaluation is ancillary to the general purpose of voting on his contract."   *Id.*   As a result, the court concluded that "considering adoption of [the board's] prior evaluation was not a 'purpose' that was required to be separately set forth" in the earlier notice of the special meeting.   *Id.*   The court then stated that:

Since the [earlier] February 7 [special meeting] notice complied with R.C. 121.22(F), the board's action to nonrenew Stiller's superintendent's contract was not invalidated by R.C. 121.22(H). *Stiller does not deny that he received proper notice of the action he is attacking, i.e., the nonrenewal.*

(Emphasis added.) *Stiller*, 74 Ohio St.3d at 119, 656 N.E.2d 679.

{¶ 64} The procedures in *Stiller* involved R.C. 3319.01. This statute contains essentially the same requirements as R.C. 3313.22, which governs treasurer's contracts. Both statutes indicate that an individual is deemed reemployed unless he or she receives written notice prior to a certain date of the school board's intention not to reemploy. R.C. 3319.01; R.C. 3313.22(A). Both statutes also state that "establishment of an evaluation procedure shall not create an expectancy of continued employment" and that nothing in the pertinent section or division "shall prevent a board from making a final decision regarding the renewal or failure to renew * * * ." R.C. 3319.01; R.C. 3313.22(D).

{¶ 65} In addition, both statutes provide for contractual termination under R.C. 3319.16. *See* R.C. 3319.01; R.C. 3313.22(E). The court noted in *Stiller* that the superintendent had received timely notice of nonrenewal under R.C. 3319.01, and that the board's failure to comply with its own evaluation policy did not entitle the superintendent to reemployment for an additional one-year term under that statute. *Stiller*, 74 Ohio St.3d at 116-117, 656 N.E.2d 679. However, that issue differs from whether notice of a special meeting complies with R.C. 121.22(F).

{¶ 66} In contrast to the situation in *Stiller*, Jones is denying that he received proper notice of the nonrenewal. Additionally, the notice in *Stiller* specifically stated that the purpose of the special meeting was to vote on the superintendent's contract, thus giving

notice to the public of the purpose of the meeting. Here, no purpose for the meeting was stated, and to the extent any purpose was indicated (to act on recommendations from the superintendent or treasurer), it obscured, rather than revealed the meeting's true purpose.

**{¶ 67}** "R.C. 121.22(H) prescribes invalidation of any action taken at a meeting that does not comply with the Open Meetings Act * * *." *State ex rel. Bates v. Smith*, 147 Ohio St.3d 322, 2016-Ohio-5449, 65 N.E.3d 718, ¶ 16. Moreover, R.C. 121.22(I)(3) provides that "[i]rreparable harm and prejudice to the party that sought the injunction shall be conclusively and irrebuttably presumed upon proof of a violation or threatened violation * * *."

**{¶ 68}** Accordingly, we agree with Jones that the trial court erred in rendering summary judgment in favor of the Board. For the reasons discussed, the First Assignment of Error is sustained as to the alleged violation of R.C. 121.22(F), and overruled as to the alleged violation of R.C. 3313.16.

### III. Violation of R.C. 121.22(G).

**{¶ 69}** Jones' Second Assignment of Error states that:

> The Trial Court Committed Prejudicial Error by Granting Summary Judgment for the Board and Not Granting Summary Judgment for Mr. Jones on the Issue of the Board's Violation of Ohio Rev. Code § 121.22(G) (Trial Court's Order).

**{¶ 70}** Under this assignment of error, Jones contends that summary judgment was inappropriate because the Board misstated its reasons for going into executive session. When the Board went into executive session, the reason given in the motion

was "to consider the employment of public employees." Doc. #16, Stipulations at No. 8, and Ex. G attached to the Stipulations.[6]

{¶ 71} Although this statement technically complies with R.C. 121.22(G)(1), Jones contends that the statement should have instead referenced the dismissal of a public employee. Jones further argues that he does not have to prove that the Board was purposely deceptive, but notes that the Board did, in fact, do its best to disguise why it was going into executive session.

{¶ 72} In response, the Board states that considering "employment" of employees is a permissible exception under R.C. 121.22(G)(1), and that it was not considering Jones' dismissal; instead, the Board was considering nonrenewal or whether to "reemploy" Jones for a succeeding term. The Board has also argued elsewhere in its brief that, under R.C. 121.22(G)(1), the motion to vote and hold an executive session "need not include the name of any person to be considered at the meeting." Jones responds to this latter point by noting that he has never argued that his name was required to be included; he simply contends that that Board improperly disguised the true purpose of what it was doing, to circumvent Ohio's Sunshine Act.

{¶ 73} As was noted, R.C. 121.22(G)(1) allows executive sessions to be held "[t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official * * *." In *Maddox*, we agreed with the trial court that a public body had violated R.C. 121.22(G) by going into executive session to discuss "evaluation" of an employee, as that was not a purpose listed in R.C.

---

[6] As noted earlier, the Stipulations refer to the minutes of the Board meeting as Ex. F, but the minutes are labeled Ex. G.

121.22(G)(1). *Maddox v. Greene Cty. Children Servs. Bd. Of Dirs.*, 2014-Ohio-2312, 12 N.E.3d 476, ¶ 19 (2d Dist.). We commented that "[p]rior to entering into executive session, however the public body must specify the context in which 'job performance' will be considered by identifying one of the statutory purposes set forth in R.C. 121.22(G)." *Id.*

{¶ 74} Here, the Board specified in its motion that it would go into executive session to consider employment of a public employee. This is one of the items listed as a permissible reason for an executive session under R.C. 121.22(G)(1).

{¶ 75} R.C. 121.22(G)(1) does not contain the terms "nonrenewal;" "reemployment," or "termination." Instead, the statute refers to "employment," and "dismissal." The statute, itself, also does not define any of the terms contained in R.C. 121.22(G)(1).[7]

{¶ 76} "Venerable principles of statutory construction require that in construing statutes, we must give effect to every word and clause in the statute." (Citation omitted.) *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18. "We must 'read words and phrases in context and construe them in accordance with rules of grammar and common usage,' * * * and we may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording." (Citation omitted.) *Id.* Furthermore, when "a statute's language is clear and unambiguous, we apply the statute as written, * * * giving effect to its plain meaning." (Citations omitted.) *Id.* at ¶ 20.

---

[7] The statute does define a few terms, like "public body," "meeting," and "public office." R.C. 121.22(B)(1), (2), and (4).

{¶ 77} The common meaning of "nonrenewal" is "a failure or refusal to renew something or someone; a notice of nonrenewal; the nonrenewal of a contract." *See* https: // www . merriam – webster . com / dictionary / nonrenewal. "Renew" or "renewed" means "to do again." *See* https: // www . merriam – webster . com / dictionary / renewed. Terminate is defined as "to discontinue the employment of." *See* https: // www . merriam – webster . com / dictionary / terminate. "Employ" is defined as "(1): to use or engage the services of (2): to provide with a job that pays wages or a salary." *See* https: // www . merriam – webster . com / dictionary / employ. And finally, "dismissed" means "to remove from position or service." *See* https: // www . merriam – webster . com / dictionary / dismissed.[8]

{¶ 78} There is a distinction between the meaning of "nonrenewal" and "termination" or "dismissal." Jones was not being "removed" from his position; instead, his contract was not being renewed, or "done again." Furthermore, as the Board notes, R.C. 3313.22 does distinguish between reemployment and termination. R.C. 3313.22(C) indicates that a board may choose to "re-employ a treasurer for a succeeding term" at a regular or special meeting held during a specified period prior to the time the treasurer's contract expires. In contrast, R.C. 3313.22(E) requires that termination of a treasurer's contract must be accomplished in accordance with R.C. 3319.16, which allows termination for cause and contains procedures that must be followed.

{¶ 79} Accordingly, on its face, the motion to move into executive session stated a proper purpose under R.C. 121.22(G)(1), as the Board was considering whether to reemploy Jones. Reemploy is sufficiently consistent with the use of the word

---

[8] The website for these definitions was accessed on November 15, 2017.

employment in R.C. 121.22(G)(1).

**{¶ 80}** The Board facially complied with R.C. 121.22(G)(1). Accordingly, the Second Assignment of Error is overruled.


## IV. Strict Compliance with R.C. 3313.16

**{¶ 81}** Jones' Third Assignment of Error states that:

The Trial Court Committed Prejudicial Error by Not Requiring the Board to Strictly Comply With Ohio Rev. Code § 3313.16 (Trial Court's Order).

**{¶ 82}** Under this assignment of error, Jones contends that the trial court erred when it rejected his argument that the Board did not have to strictly comply with requirements under R.C. 3313.16, so long as all the Board members showed up for the hearing.   The trial court also rejected Jones' arguments about lack of compliance with R.C. 3313.16 because Jones had actual notice of the special meeting.   Doc. #23, p. 5.

**{¶ 83}** Likewise, we have already concluded that the Board's failure to comply with R.C. 3313.16 did not prejudice Jones.   *See Stuble*, 8th Dist. Cuyahoga No. 44412, 1982 WL 5953, at *4, and *Wolf*, 7th Dist. Columbiana No. 03 CO 5, 2004-Ohio-2479, at ¶ 30.

**{¶ 84}** For the reasons previously mentioned, the Third Assignment of Error is overruled.


## V.  Conclusion

**{¶ 85}** Jones' First Assignment of Error having been overruled in part and sustained in part, and Jones' Second and Third Assignments of Error having been

overruled, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with our opinion.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Dennis L. Pergram
Brian L. Wildermuth
Lauren K. Epperley
Hon. Steven K. Dankof