[Cite as *State ex rel. Jones v. Dayton Pub. Schools Bd. of Edn.*, 2020-Ohio-4931.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | |
|---|---|
| STATE OF OHIO ex rel. CRAIG A. JONES, et al. : | |
| : | |
| : | Appellate Case No. 28637 |
| Plaintiffs-Appellants/Cross- : Appellees | |
| : | Trial Court Case No. 2016-CV-4132 |
| : | |
| v. : | (Civil Appeal from |
| : | Common Pleas Court) |
| BOARD OF EDUCATION OF : DAYTON PUBLIC SCHOOLS : | |
| | |
| Defendant-Appellee/Cross- Appellant | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of October, 2020.

. . . . . . . . . . .

DENNIS L. PERGRAM, Atty. Reg. No. 0010853, 50 North Sandusky Street, Delaware, Ohio 43015
    Attorney for Plaintiffs-Appellants/Cross-Appellees

BRIAN L. WILDERMUTH, Atty. Reg. No. 0066303 and LAUREN K. EPPERLEY, Atty. Reg. No. 0082924, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
    Attorneys for Defendant-Appellee/Cross-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant/Cross-Appellee, Craig A. Jones, appeals from a judgment awarding him damages against Defendant-Appellee/Cross-Appellant, Board of Education of Dayton City Schools ("Board"). According to Jones, the trial court should have awarded him additional damages because the Board failed to send him nonrenewal notices after his employment was reinstated by operation of law. In addition, Jones argues that the trial court erred by failing to award him attorney fees.

{¶ 2} In its cross-appeal, the Board contends that the trial court's damages award was incorrect, because it included compensation and benefits that did not fit within the meaning of "increments" under R.C. 3313.22(A).

{¶ 3} For the reasons discussed below, Jones was not entitled to additional damages based on Board's failure to send him further notices of nonrenewal pursuant to R.C. 3313.22(A) after he was reemployed by operation of law. Under the statute, Jones was entitled to only a one-year term of reemployment. The trial court did err, however, in failing to award Jones attorney fees based on the Board's violation of R.C. 121.22(F). Neither prong of R.C. 121.22(I)(2)(a) applied, and the court therefore abused its discretion by finding that Jones was not entitled to attorney fees. Finally, the trial court erred in adding damages that were not statutorily authorized under R.C. 3313.22(A), which allows recovery only of Jones's salary and increments. Accordingly, the judgment of the trial court will be affirmed in part and reversed in part, and this cause will be remanded for further proceedings consistent with this opinion.


I. Facts and Course of Proceedings

{¶ 4} This case is before us for the second time, following our reversal of the trial

court's summary judgment in favor of the Board and a remand for further proceedings. *See State ex rel. Jones v. Bd. of Edn. of Dayton Pub. Schools*, 2018-Ohio-676, 96 N.E.3d 333 (2d Dist.). A detailed history of this case can be found in our prior opinion. For purposes of this appeal, we note that the Board employed Jones as Treasurer pursuant to a three-year contract that began on August 1, 2013, and was to end on July 31, 2016, unless terminated earlier based on various criteria in the contract. *Id.* at ¶ 5.

{¶ 5} Instead of terminating the contract, the Board held a special meeting in February 2016 and voted not to renew the contract. *Id.* at ¶ 8. Jones subsequently brought an action for mandamus and declaratory judgment against the Board, claiming that the Board had failed to comply with statutory requirements in R.C. 3313.16 and R.C. 121.22 (Ohio's Sunshine Law) and with the Board's own policies. The trial court rendered summary judgment in the Board's favor, but, on appeal, we disagreed with the trial court.

{¶ 6} First, we held that the Board clearly violated R.C. 3313.16 and its own polices with respect to notice for a special meeting to be held on February 26, 2016. *Id.* at ¶ 23. We recounted numerous violations, which were matters that the Board easily could have avoided, since they involved the Board's own policies and a statute that was clear. *Id.* at ¶ 23-26. However, we held that the Board was not liable, based on case law indicating that liability does not lie where a party shows substantial compliance that does not cause prejudice. Our conclusion was based on the fact that Jones had actual notice of the special meeting and therefore could not have been prejudiced by the deficiencies. *Id.* at ¶ 27-28.

{¶ 7} Violation of the Ohio Sunshine Law involved a different analysis, however.

On this point, we held that the Board's notice of the special meeting failed to comply with R.C. 121.22(F) because it "did not specify any purpose that would be discussed in open session at the meeting. Instead, the notice stated only that '[o]nce they have reconvened, the board may decide to act on recommendations from the superintendent and/or treasurer at the meeting.' " *Id.* at ¶ 47, quoting Doc. #16, Stipulations at No. 3 and Ex. C-1 attached to the Stipulations.

{¶ 8} We stressed that "the Board knew the meeting was about a specific topic, but the public did not receive information about the meeting's actual purpose. In fact, the special meeting notice failed to state any purpose for the open session. To the extent that any purpose could be inferred from the statement that the Board might act on recommendations of the superintendent and treasurer, the comment in the notice was not true." *Id.* at ¶ 51. *See also id.* at ¶ 56. One stated reason for this conclusion was as follows:

In fact, the true purpose for the meeting was other than stated, as the Board president knew that the Board was not going to consider recommendations of the superintendent or treasurer with respect to public employees. Considering any such recommendations was obviously not contemplated, since the Board intended to consider these employees' own contracts. The superintendent or treasurer would hardly have recommended nonrenewal of their own contracts. Furthermore, the Board president knew prior to the issuance of the notice that the meeting's purpose was to discuss nonrenewal of the contracts of the treasurer and superintendent. Doc. # 18, Affidavit of Dr. Adil T. Baguirov, ¶ 5.

*Id.* at ¶ 56.

{¶ 9} We further stated that:

The Board President's knowledge and intent shed some light on the circumstances of this case but they are not determinative. The ultimate issue regarding the Ohio Sunshine Law is resolved by whether the resolution to nonrenew Jones' contract exceeded the scope of the purpose stated in the notice.

[Board President] Baguirov had also told Jones in early February 2016 that he would invite Jones to attend any future special meeting or executive sessions if Jones were needed. Doc. # 16, Stipulations at No. 14 and 16, and Ex. L, p. 4 and Ex. M, p. 2 attached to the Stipulations. However, Baguirov did not invite Jones to the February 23, 2016 special meeting or executive session. A logical assumption from this would have been that the special meeting or executive session had nothing to do with Jones.

The Board argues that the "recommendations" language was of no consequence because it was often inserted in notices. As an initial point, no witness in the trial court made such a statement. [Administrative staff member] Kidd's affidavit merely identified some attached meeting notices, and indicated that the Board held 17 special meetings in 2016.

The fact that language about recommendations was included in some other notices is irrelevant for purposes of the present case. As was noted, the Board president knew when the special meetings notice was

issued that the Board would not be considering the recommendations of the superintendent or treasurer at the special meeting.

*Id.* at ¶ 57-60.

{¶ 10} Because R.C. 121.22(H) requires invalidation of actions taken at meetings that violate the Open Meetings Act, we held that the trial court erred in granting summary judgment to the Board. *Id.* at ¶ 67-68. We therefore reversed the trial court's decision and remanded the case for further proceedings. *Id.* at ¶ 85.

{¶ 11} After the case was remanded, the trial court stayed the action for a short time because the Board had appealed to the Supreme Court of Ohio. However, on June 20, 2018, the Supreme Court of Ohio declined to accept the appeal for review. *State ex rel. Jones v. Dayton Pub. Schools Bd. of Edn.*, 153 Ohio St.3d 1403, 2018-Ohio-2380, 100 N.E.3d 423. The trial court then resumed consideration of the case.

{¶ 12} After holding a pretrial hearing, the court referred the case to a magistrate for a decision on all remaining matters in the case. The magistrate set deadlines for completing discovery and filing summary judgment motions.

{¶ 13} On February 11, 2019, the Board filed a motion for summary judgment, contending that Jones's recovery, after setoff, should be limited to $42,345.78. The Board also argued that Jones was not entitled to recover attorney fees. *See* Board Motion for Summary Judgment.

{¶ 14} On the same day, Jones also filed a motion for summary judgment. His position was that he was entitled to three years of compensation (the initial automatic renewal for 2016-2017, plus two additional years), minus setoffs, or a total of $173,617.70. This was based on the Board's failure to provide any notice for the years

after 2016 of an intent not to renew his contract. In addition, Jones contended that he was entitled by statute to attorney fees.

{¶ 15} On June 7, 2019, the magistrate filed a decision concluding that under the language in R.C. 3313.22, Jones was entitled only to the amount of his base pay, minus set-offs, for one year, and to the standard 14% contribution to the State Employees Retirement System ("SERS"). These damages totaled $42,345.78. In addition, the magistrate found that, while the Board based its application of the special meeting notice on ordinary principles of law, there was no showing that the Board believed it was serving public policy. As a result, the magistrate concluded that Jones was entitled to attorney fees. Magistrate's Decision, p. 12.

{¶ 16} Both sides filed objections to the magistrate's decision and filed memoranda and reply memoranda supporting their positions. After reviewing the record, the trial court overruled Jones's objections in part and sustained them in part on November 14, 2019. *See* Entry and Order * * * ("Original Entry"). The court held that Jones was only entitled to a one-year renewal contract, but concluded that additional amounts ("increments") should be added to the damages. The court also sustained the Board's objections, concluding that Jones was not entitled to attorney fees under R.C. 121.22(I). No appeal was taken from this decision.

{¶ 17} Subsequently, on December 2, 2019, the trial court filed a "Stipulated Order

and Entry Granting Civ.R. 60(B) Relief to Correct Final Judgment" ("Stipulated Order").[1] The court then filed an Amended Entry and Order * * * ("Amended Entry") concerning the objections on December 13, 2019. On December 16, 2019, Jones filed a notice of appeal from both the original and amended orders; on December 20, 2019, the Board also appealed from both orders.

## II. Jurisdiction

{¶ 18} Normally, before addressing the assignments of error, we would consider whether we have jurisdiction over the appeal and cross-appeal of the November 14, 2019 Original Entry, since neither party filed a timely notice of appeal from that order. *See* App.R. 4(A); Civ.R. 58(B). "This is a matter we can raise on our own initiative." *Waxman v. Link*, 2d Dist. Montgomery No. 28415, 2020-Ohio-47, ¶ 19.

{¶ 19} In this situation, we would also need to consider whether the trial court validly granted the motion for Civ.R. 60(B) relief in light of the fact that no written motion for such relief was filed, nor were grounds presented for obtaining such relief, as required by the rule. *Catudal*, 10th Dist. Franklin No. 14AP-749, 2015-Ohio-1559, at ¶ 20.

{¶ 20} However, we do not have to consider the latter issue because the trial court's November 14, 2019 Original Order was not a final appealable order, even though

---

[1] No written motions for relief from judgment are in the record; instead, the trial court simply stated in its entry that the parties had moved for relief. *See* Stipulated Order (Dec. 2, 2019), p. 1. The court also mentioned a stipulation, but there is no stipulation in the record. In a footnote, the court listed Civ.R. 60(B)(5) as the ground for relief. *Id.* at fn.1. Concerning the basis for relief under Civ.R. 60(B)(5), "[t]he grounds for invoking the rule must be substantial, and relief may be granted only in unusual or extraordinary circumstances." *Catudal v. Catudal*, 10th Dist. Franklin No. 14AP-749, 2015-Ohio-1559, ¶ 20. Because no motion was filed, the record is devoid of evidence of such grounds or circumstances.

the court thought it was a final judgment. As a result, the court did not need to grant relief under Civ.R. 60(B) or even under Civ.R. 60(A), which, as noted, the trial court also mentioned in its Stipulated Order.[2]

{¶ 21} "An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met." *State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 5, citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus.

{¶ 22} As pertinent here, R.C. 2505.02(B) provides that "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following: (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment * * *." A preliminary determination of obligations absent an order enforcing them is not a final appealable order. *E.g., Citizens' Heritage Bank v. Christian Light Bookstore*, 2d Dist. Miami No. 90-CA-17, 1991 WL 3859, *3 (Jan. 14, 1991).

{¶ 23} Here, the trial court's Original Order was not final for several reasons. First, the order left an item yet to be determined. Specifically, the court concluded that

---

[2] *See* fn.1, above, discussing Stipulated Order at p. 1, fn. 1. Notably, the trial court did not mention Civ.R. 60(A) in its subsequent December 13, 2019 Amended Entry. Instead, the court referenced only Civ.R. 60(B). *See* Doc. #26, Amended Entry, p. 1. The court also did not make the Amended Entry a nunc pro tunc order, even though it considered the Original Order to be a final judgment. This is probably because even though the Amended Entry's content is mostly clerical, the court did include one issue it failed to discuss in the original order (the mandatory $500 civil forfeiture fee). Doc. #26 at p. 8-9. Where an initial final judgment is not timely appealed, the ability to appeal following a Civ.R. 60(A) nunc pro tunc order depends on whether the change in the original order is substantive or merely clerical. *Brush v. Hassertt*, 2d Dist. Montgomery No. 21687, 2007-Ohio-2419, ¶ 21 (holding that appellant's failure to timely appeal the first order barred consideration of that order's merits, because the subsequent nunc pro tunc order was only clerical). Failing to include the mandatory fee would have been substantive.

Jones was entitled to total damages of $186,048, minus offsets for payments Jones had received from August 1, 2016 to July 31, 2017. Original Entry, p. 5-6. However, the court commented that it did not know the amount Jones had received for the month of July 2017. *Id.* at p. 6, fn. 17. After making this observation, the court stated that the amount it calculated "must still be offset by the parties by determining Mr. Jones [sic] income for the month of July 2019." *Id.* at p. 6.

**{¶ 24}** More importantly, the Original Entry did not order the Board to pay Jones a specific amount; it simply overruled the Board's objections to part of the magistrate's decision and sustained Jones's objections. Based on 2019 amendments to Civ.R. 54(A), a "judgment" now " 'means a written entry ordering or declining to order a form of relief * * *.' " *Waxman*, 2d Dist. Montgomery No. 28415, 2020-Ohio-47, at ¶ 22, quoting Civ.R. 54(A) (2019). Consequently, the November 14, 2019 Original Entry was interlocutory, and the Amended Order, issued on December 13, 2019, was the final judgment in the case. As indicated, both sides timely appealed from that judgment, and we therefore are not precluded from considering the merits of this case.

**{¶ 25}** Having resolved that issue, we now turn to the assignments of error.


### III. Term of Automatic Renewal

**{¶ 26}** Jones's First Assignment of Error states:

> The Trial Court Committed Prejudicial Error by Determining, on Summary Judgment, That After Mr. Jones Was Automatically Re-Employed for a One-Year Term of Employment Following His Invalid Non-Renewal, the Board Had No Obligation to Take Action to Non-Renew Him (Trial

Court's Amended Entry).

{¶ 27} Under this assignment of error, Jones contends that once his employment was automatically renewed pursuant to R.C. 3313.22 for the year 2016-2017, he was entitled to further renewal for the years 2017-2018 and 2018-2019 (or even beyond) because the Board failed to send him non-renewal notices for either time period. The trial court rejected this assertion, based on what it termed the unambiguous language of the statute. Amended Entry at p. 4.

{¶ 28} After we remanded the case, the parties stipulated to various facts. *See* Stipulations (Feb. 8, 2019). The first stipulation provided, in pertinent part, that:

[Jones's] last three years of consecutive employment under a written contract adopted by the Board were from August 1, 2013 through July 31, 2016. The Board passed a resolution to non-renew that contract effective July 31, 2016. The Board has not, since that date and as of February 9, 2019, passed a resolution to re-employ him nor to non-renew any contract alleged to have been attained by operation of law.

Stipulations at p. 1, ¶ 1.

{¶ 29} As indicated, this matter was decided in the trial court on the basis of opposing summary judgment motions. "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999),

citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 30} R.C. 3313.22 provides in relevant part that:

(A) * * * [T]he board of education of each city, local, exempted village, and joint vocational school district, at a regular or special meeting held not later than the first day of May, shall appoint a treasurer, who shall be the chief fiscal officer of the school district. The treasurer shall be appointed for a term not longer than five years beginning the first day of August and ending the thirty-first day of July.

The board shall execute a written contract of employment with the treasurer.

At the expiration of a treasurer's current term of employment, the treasurer is deemed re-employed for a term of one year at the same salary plus any increments that the board may authorize, unless the board, on or before the first day of March of the year in which the contract of employment expires, either re-employs the treasurer for a succeeding term as provided in division (C) of this section or gives to the treasurer written notice of its intention not to re-employ the treasurer.

{¶ 31} According to Jones, he was automatically reemployed for the 2016-2017 school year due to our prior decision. He further argues that if the Board wished to keep him from being deemed reemployed thereafter, the Board was required to provide notice

by March 1, 2017, as stated in R.C. 3313.22. In opposing Jones's argument, the Board contends that it did not execute a written contact with Jones for the 2016-2017 school year, and that since a "non-existent contract cannot expire, the statutory duty cannot arise." Board's Appellate Brief, p. 8. Neither party has cited any authority to support its position.

{¶ 32} Our own research fails to disclose any authority interpreting R.C. 3313.22 in the context of the effect of reemployment by operation of law. However, the laws in Ohio concerning statutory construction are well-established. "When analyzing statutory provisions, our paramount concern is to ascertain and give effect to the intention of the General Assembly." *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7, citing *Henry v. Cent. Natl. Bank*, 16 Ohio St.2d 16, 242 N.E.2d 342 (1968), paragraph two of the syllabus. Primarily, courts "seek to determine legislative intent from the plain language of a statute." *Id.*, citing *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18.

{¶ 33} Furthermore, where "the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). "To discern legislative intent, we first consider the statutory language, reading the words and phrases in context, according to rules of grammar and common usage." *Armstrong v. John R. Jurgensen Co.*, 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, ¶ 12, citing R.C. 1.42 and *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40.

{¶ 34} After reviewing the statute, we agree with the trial court that it is

unambiguous. Based on the wording in the statute, the clear intent is to extend employment for one year only, based on a board of education's failure to comply with statutory requirements. There is no requirement to issue a contract, only a requirement to extend employment for one year.

{¶ 35} Thus, once the Board's decision was invalidated, Jones's term of employment was extended for one year only. Interpreting the statute to require boards of education to meet and continually issue notices of nonrenewal in cases that could be involved in litigation for many years would be inconsistent with the statute's evident intent, which is to provide a remedy for a single failure. This case is an example of that type of situation, as it is still in litigation more than four years after the notice of nonrenewal was issued.

{¶ 36} We have conducted an extensive search of cases involving R.C. 3313.22 as well as similar nonrenewal statutes like R.C. 3319.02, and we have found no cases presenting the type of situation involved here, where an employee received a notice of nonrenewal, and then claimed that new notices must still be sent for years after the nonrenewal.

{¶ 37} We also note that another similar statute, R.C. 3319.11, which pertains to both continuing and limited teaching contracts, states that "[i]f * * * the board does not give the teacher written notice on or before the first day of June of its intention not to reemploy the teacher, the teacher is deemed reemployed *under an extended limited contract* for a term not to exceed one year." (Emphasis added.) R.C. 3319.11(B)(1) and (2). Unlike this statute, R.C. 3313.22(A) does not contain any reference to a contract; it simply says that the treasurer is "deemed reemployed for a term of one year."

{¶ 38} Finally, in the complaint filed in the trial court, Jones did not request relief beyond the one-year term. Specifically, Jones only requested "a writ of mandamus ordering the Board to issue Mr. Jones a one year contract of employment as treasurer for the Board for the 2016-2017 contract year, at the same salary he was paid for the 2015-2016 contract year, his same benefits, plus any increments the Board may authorize and to take the steps to have all of his service credit properly awarded for retirement purposes. Summary of the Docket, Journal Entries and all Original Papers for Montgomery App. No. CA27649, Complaint, p. 5.[3]

{¶ 39} Accordingly, Jones's First Assignment of Error is overruled.


III.   Denial of Attorney Fees

{¶ 40} Jones's Second Assignment of Error states that:

The Trial Court Committed Prejudicial Error by Not Determining That Mr. Jones Was Entitled to Attorney Fees under R.C. 121.22(I)(2). (Trial Court's Amended Entry).

{¶ 41} Under this assignment of error, Jones contends that the trial court erred in refusing to award attorney fees under R.C. 121.22(I)(2).

{¶ 42} In *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 667 N.E.2d 1223 (1996), the Supreme Court of Ohio stressed that "[o]ne of the strengths of American government is the right of the public to know and understand the actions of their elected representatives. This includes not merely the right to know a government body's final

---

[3] This is the docket for the prior appeal, which the clerk has transferred to the current appeal. All other docket references are to the docket for the current appeal.

decision on a matter, but the ways and means by which those decisions were reached. There is great historical significance to this basic foundation of popular government, and our founding fathers keenly understood this principle." *Id.* at 419.

{¶ 43} The court further observed that "public scrutiny is necessary to enable the ordinary citizen to evaluate the workings of his or her government and to hold government accountable. If the public can understand the rationale behind its government's decisions, it can challenge or criticize those decisions as it finds necessary; the entire process thus allows for greater integrity and prevents important decisions from being made behind closed doors." *Id.* at 420.

{¶ 44} The court awarded attorney fees in *White* because a board of county commissioners failed to maintain "full and accurate" minutes as required by R.C. 121.22 and R.C. 305.10. *Id.* at 424. "The version of R.C. 121.22(I)(2) in effect at the time [the] appellant's cause of action arose provided for an award of 'all court costs and reasonable attorney's fees.' " *White v. Clinton Cty. Bd. of Commrs.*, 77 Ohio St.3d 1267, 675 N.E.2d 471 (1997), citing 144 Ohio Laws, Part II, 1858 (*White II*). In *White II*, the court noted that "[b]ecause an award of attorney fees is punitive in nature, we look to whether a party was acting in good faith and had a reasonable legal basis for its failure to comply with the statute." *Id.* at 1267-1268.

{¶ 45} After considering these factors, the *White II* court reduced the amount of attorney fees for two reasons. First, the court noted that:

> *White's* case was one of first impression. It involved the novel issue
> of the interpretation of R.C. 121.22, 149.43 and 305.10. There was little
> guidance in terms of case law that defined the scope of recordkeeping.

Many county boards of commissioners, including the Clinton County Board, were operating under the belief that a bare-bones summary of a meeting was sufficient for purposes of maintaining statutorily required minutes.

The Clinton County Board of Commissioners maintained minutes of its meetings, but the minutes lacked sufficient detail to constitute a full record of the proceedings of the board. However, to the extent the records existed, the Clinton County Board acted in accordance with existing law and made the records available to the appellant upon request.

*White II* at 1268.

{¶ 46} The second point the court noted in connection with the reasonableness of the fees was that the plaintiff had dismissed three claims prior to trial and should not be compensated for the work done on those claims. *Id.* Accordingly, the court reduced the fees. *Id.*

{¶ 47} Subsequently, in 1993, the legislature amended R.C. 121.22(I)(2)(a) substantially. This amended version was effective on February 9, 1994, and has remained unchanged since then, despite many further amendments to R.C. 121.22. *See* H.B. No. 111, H.B. 1993 Ohio Laws File 76. In addition, R.C. 121.22 has been amended four times since the Board's 2016 decision. Again, however, the language in R.C. 121.22(I)(2)(a) has still not been changed.[4]

{¶ 48} Despite any changes in the statute, the emphasis on the importance of disclosure has remained. *E.g., State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's*

---

[4] *Compare* Am. Sub. H.B. 64, 2015 Ohio Laws File 11 with Sub. H.B. 413, 2016 Ohio Laws File 119; Sub. H.B. 158, 2016 Ohio Laws File 122; Am. Sub. S.B. 201, 2018 Ohio Laws File 157; and Am. Sub. H.B. 166, 2019 Ohio Laws File 10.

*Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, 101 N.E.3d 396 ¶ 60.   *See also State ex rel. More Bratenahl v. Village of Bratenahl*, 157 Ohio St.3d 309, 2019-Ohio-3233, 136 N.E.3d 447, at ¶ 12-14 (advocating for a broad interpretation of openness under R.C. 121.220. *More Bratenahl* stressed that " 'Open' is a word with a variety of usages.   It is defined as "completely free from concealment: exposed to general or particular perception or knowledge."   *Id.* at ¶ 13, citing Webster's Third New International Dictionary 1579 (1966). Additionally, R.C. 121.22(A) specifically provides that the statute "shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law."

{¶ 49} With regard to attorney fees, R.C. 121.22(I) states, in pertinent part, that:

(1) * * * Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions.

(2)(a) If the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction and shall award to that party all court costs and, subject to reduction as described in division (I)(2) of this section, reasonable attorney's fees.   The court, in its discretion, may reduce an award of attorney's fees to the party that sought the injunction or not award attorney's fees to that party if the court determines both of the following:

(i) That, based on the ordinary application of statutory law and case law as it existed at the time of violation or threatened violation that was the basis of the injunction, a well-informed public body reasonably would believe that the public body was not violating or threatening to violate this section;

(ii) That a well-informed public body reasonably would believe that the conduct or threatened conduct that was the basis of the injunction would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct.

**{¶ 50}** Fees are therefore mandatory unless the court decides that neither of the prongs in R.C. 121.22(I)(2)(a) applies. Because this issue involves the court's discretion, we review the decision for abuse of discretion. *Maddox v. Greene Cty. Children Servs. Bd. of Dirs.*, 2014-Ohio-2312, 12 N.E.3d 476, ¶ 53 (2d Dist.), citing *Specht v. Finnegan*, 149 Ohio App.3d 201, 2002-Ohio-4660, 776 N.E.2d 564, ¶ 42 (6th Dist.). An abuse of discretion means that the court's attitude is "unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* Decisions are unreasonable where no sound reasoning process would support them." *Id.*

**{¶ 51}** As indicated, the magistrate found that attorney fees were warranted because there was no showing that the Board believed it was serving public policy.

Following the Board's objections, the trial court rejected the attorney fee claim. Concerning the first prong, the court concluded that, based on then-existing law, the Board believed it was not violating the law when it issued the February 11, 2016 special meeting notice. Amended Entry at p. 8. The court made the same finding concerning public policy, stating that it was unable to "find that the Board reasonably complied with existing law, but yet somehow did not believe it was serving public policy." *Id*.

{¶ 52} Both sides assert that the inquiry under the statute is objective, and the trial court's comments, noted above, indicate the same belief, although not explicitly stated as such. Nonetheless, we disagree to some extent. If the trial court's theory were correct, there would never be a reason to consider the second prong of the analysis, and attorney fees could never be awarded, as long as the first prong was satisfied. Furthermore, there is no way to compare what a well-informed board would do without considering the circumstances of the particular case at hand.

{¶ 53} Furthermore, while the statute could have been more clearly drafted, the trial court's approach is inconsistent with how courts actually handle these cases. Despite the fact that both prongs of R.C. 121.22(I)(2)(a) refer to a "well-informed" public body, courts have not confined themselves merely to an objective analysis.

{¶ 54} Following the 1994 amendments, courts have held that under the statute, "[t]he court is * * * given the discretion to reduce the attorney fees awarded, if the court determines that the public body reasonably believed that it was not violating R.C. 121.22 and that its conduct served public policy." *The Cincinnati Enquirer v. Cincinnati*, 145 Ohio App.3d 335, 339-340, 762 N.E.2d 1057 (1st Dist.2001). *Accord Mansfield City Council v. Richland Cty. Council AFL-CIO*, 5th Dist. Richland No. 03 CA 55, 2003 WL

23652878, *6 (Dec. 24, 2003); *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 2012-Ohio-2569, 972 N.E.2d 115, ¶ 85 (12th Dist.). This is also the standard our own district has used. *Maddox*, 2014-Ohio-2312, 12 N.E.3d 476, at ¶ 61.[5]

{¶ 55} In *Cincinnati Enquirer*, the court affirmed the trial court's decision to award attorney fees. When discussing the second prong of R.C. 121.22(I)(2)(a), the court commented that "the city failed to present any evidence that it had a reasonable belief that it was in compliance with R.C. 121.22 and that its closed-door meetings served public policy." *Cincinnati Enquirer* at 340. Likewise, in *Mansfield City Council*, in deciding to award attorney fees, the court considered the facts that occurred and imputed knowledge to the council. *Mansfield City Council* at *6.

{¶ 56} In *Mathews v. E. Local School Dist.*, 4th Dist. Pike No. 00CA647, 2001 WL 243501 (Jan. 4, 2001), the court commented that "at least one Board member knew prior to the meeting that the 'Sunshine Law' required the Board to take formal action only in an open meeting and at least two Board members knew that it was highly unusual to do so in an executive session. Therefore, we find that the trial court did not abuse its discretion in determining that the Board was not entitled to a reduction in attorneys [sic] fees pursuant to R.C. 121.22(I)(2)(a)." *Id.* at *5.

{¶ 57} With these principles and cases in mind, we will consider the trial court's decision not to award attorney fees. Before we do so, we note that the parties have

---

[5] One court has said that "[t]he statute also allows the court, in its discretion, to reduce an award of attorney's fees or simply deny the award all together [sic] if the action taken by the public body was taken in good faith or it had a reasonable legal basis upon which to base its non-compliance." *Myers v. Hensley*, 3d Dist. Hardin No. 6-99-02, 1999 WL 797140, *3 (Sept. 23, 1999), citing R.C. 121.22(I)(2)(a)(i)-(ii). This is incorrect, because the statute is conjunctive, not disjunctive. In addition, the amended statute does not use the term "good faith." Instead, it refers to "public policy."

spent a good amount of time discussing what violations Jones's attorney informed the Board about and how the correspondence either established or did not establish that the Board knew it was violating R.C. 121.22. *See* Jones's Brief, p. 9-11; Board's Brief at p. 11-12; and Jones's Reply Brief, p. 8-9. This discussion, however, is irrelevant. The evidence in question relates to discussions the parties had after the fact; it is not relevant to what occurred before the Board meeting (or in the immediate aftermath, when the Board altered the agenda). *See Jones*, 2018-Ohio-676, 96 N.E.3d 333, at ¶ 40.

{¶ 58} After reviewing the record and applicable law, we find that the trial court's decision was based on unsound reasoning, and therefore, was an abuse of discretion. Regarding the first prong, the court stressed that existing law before our decision had held that "to comply with R.C. 121.22(G)(1) all a public body must do is state a specific purpose for entering executive session," and "[t]hat is what the Board did here." Amended Entry at p. 7-8. This is the same reasoning that the trial court originally used in granting summary judgment to the board. *Jones* at ¶ 54. However, this statement misses the point. Our decision was not based on a violation of R.C. 121.22(G)(1); in fact, we specifically said so. *Id.* at ¶ 48.

{¶ 59} In its decision on attorney fees, the trial court went on to comment in a footnote that we had "changed" existing law by deciding that the " 'true' purpose of the special meeting notice was not really notice at all." *Id.* at p. 8, fn. 27. Based on our reversal of the trial court's decision granting summary judgment to the Board, it is clear that the trial court disagrees with our opinion. However, we are not aware of any case law permitting public bodies to mislead the public by including language in notices that disguises what the public body actually intends to do. The parties have also not provided

us with any such authority.

{¶ 60} In this regard, our opinion found a violation of R.C. 121.22(F) and cited *existing* authority, by stating that:

> Likewise, in the case before us, the notice of the special meeting did not inform the public of the true purpose of the meeting. As in *Keystone*, the Board knew the meeting was about a specific topic, but the public did not receive information about the meeting's actual purpose. In fact, the special meeting notice failed to state any purpose for the open session. To the extent that any purpose could be inferred from the statement that the Board might act on recommendations of the superintendent and treasurer, the comment in the notice was not true.
>
> * * *
>
> In fact, the true purpose for the meeting was other than stated, as the Board president knew that the Board was not going to consider recommendations of the superintendent or treasurer with respect to public employees. Considering any such recommendations was obviously not contemplated, since the Board intended to consider these employees' own contracts. The superintendent or treasurer would hardly have recommended nonrenewal of their own contracts. Furthermore, the Board president knew prior to the issuance of the notice that the meeting's purpose was to discuss nonrenewal of the contracts of the treasurer and superintendent. Doc. # 18, Affidavit of Dr. Adil T. Baguirov, ¶ 5.

*Jones*, 2018-Ohio-676, 96 N.E.3d 333, at ¶ 51 and 53, citing *Keystone Commt. v.*

*Switzerland of Ohio Sch. Dist. Bd. of Edn.*, 2016-Ohio-4663, 67 N.E.3d 1 (7th Dist.).

**{¶ 61}** Given the above discussion, a well-informed board would not have reasonably believed under existing law that it could send out a misleading special meeting notice. Notably, when we considered the case previously, the Board argued that the language we questioned was often inserted in meeting notices. *Jones* at ¶ 59. We found that "fact" was not established by the evidence. *Id.* at ¶ 60. We also said it was irrelevant for purposes of the current case because "the Board president knew when the special meetings notice was issued that the Board would not be considering the recommendations of the superintendent or treasurer at the special meeting." *Id.*

**{¶ 62}** Additionally, a well-informed board would not have reasonably believed it could alter the content of its previously published agenda *after* the Board meeting. *Id.* at ¶ 35, 38, and 40. In our prior opinion, we noted that the nonrenewal of the contracts of Jones and the superintendent were not listed in the agenda that the Board posted online before the meeting. *Id.* at ¶ 40. However, the Board modified the agenda the day after the meeting "by adding the non-renewal resolutions as agenda items, while maintaining the prior date used for the original agenda." *Id.* at ¶ 35.

**{¶ 63}** Concerning this issue, we note that the Board has attempted to add facts not of record during the current appeal, as it did in the prior appeal and in the trial court on remand. Specifically, the Board blames any problems with the agenda on a computer program. *Jones*, 2018-Ohio-676, 96 N.E.3d 333, at ¶ 35, fn.3; Objections of Baord to the Magistrate's Decision (June 21, 2019), p, 13; and Board's Appellate Brief, p. 16, fn.6.

**{¶ 64}** Our opinion noted that the Board had "argued on appeal that modification of the agenda was required due to a computer program that the Board uses. No

evidence establishing such a fact was presented in the trial court." *Jones* at ¶ 35, fn.3.

{¶ 65} Despite the fact that we explicitly mentioned this point, the Board made no attempt to introduce further evidence in the trial court as to the alleged justification for its alteration of the agenda. This failure raises an inference that the evidence to which the Board alludes either does not exist or is unfavorable to its position. And now, the Board again raises this point on appeal in its brief.

{¶ 66} The legal principle is well-established that appellate courts decide appeals based only on the evidence of record. "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. *Accord Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13; *Stuck v. Miami Valley Hosp.*, 2020-Ohio-129, 141 N.E.3d 290, ¶ 14 (2d Dist.).

{¶ 67} When the trial discussed the second prong of R.C. 121.22(I)(2)(a), it also commented that "other courts have held that when the conduct is not egregious, attorney fees are not warranted." Amended Entry at p. 8. The authority cited for this proposition was one case: *State ex rel. Dunlap v. Violet Twp. Bd. of Trustees*, 5th Dist. Fairfield No. 12-CA-8, 2013-Ohio-2295. *Id.* at Dunlp. 8, fn. 27. However, the court's statement misconstrues Dunlap's holding.

{¶ 68} *Dunlap* involved a mandamus action brought in the court of appeals, in which several violations, even ones that the board admitted, were barred by the statute of limitations. However, the court of appeals did find several instances where the board failed to comply with R.C. 121.22. *Dunlap* at ¶ 17, 25, and 26. In declining to allow

attorney fees, the court noted that fees were inappropriate because the action was brought in the court of appeals rather than in the common pleas court; therefore, no injunction had been issued, as required by R.C. 121.22(I). *Id.* at ¶ 32. After finding authority that attorney fees may be allowed in mandamus actions for violations of the Open Meetings Act, the court then stated (without citations), that:

> The conduct by Respondents in this case was not as egregious as the conduct where attorney fees have been awarded. Attorney fees were awarded where the minutes were wholly incomplete and contained such errors as citing a member had voted who was not even on the council. In the instant case, aside from the two instances where any statutory reason was omitted, it appears Respondents attempted to comply with the Sunshine laws by citing to a specific code section together with the topic which was to be discussed. Of the many instances cited by Relator, only one clerical error or omission was found. Further, the public benefit in bringing this cause is minimal at best in this case as the majority [sic] alleged violations have not been proven.

*Id.* at ¶ 34.

{¶ 69} Thus, *Dunlap* did not state that violations must be "egregious" for attorney fees to be allowed; it simply noted that the violations in the case before were not as bad as those in other unnamed cases. However, we have found no authority indicating that a public body's conduct must be egregious. As indicated, the issue relates to whether "a 'well informed' public body reasonably would have believed * * * that its conduct served public policy." *Maddox,* 2014-Ohio-2312, 12 N.E.3d 476, at ¶ 61. The statute does not

mention good faith.

{¶ 70} Furthermore, the idea of whether a public benefit is served is not the correct standard to apply under R.C. 121.22(I)(2). *See Wheeling Corp. v. Columbus & Ohio River RR. Co.*, 147 Ohio App.3d 460, 2001-Ohio-8751, 771 N.E.2d 263 (10th Dist.), which reversed a trial court decision applying the "benefit" standard. In doing so, the court of appeals commented that:

> ORDC cites several cases in support of the trial court's conclusion that attorney fees were not warranted on the basis that no significant public benefit would result from appellant's OMA [Open Meeting Act] action. However, such cases are not applicable to the request for attorney fees here. First, those cases largely dealt with the Ohio Public Records Act under R.C. 149.43 and not the OMA. Second, even if the analysis set forth in such cases was once applicable to attorney fees under the OMA, such is no longer the case due to an amendment to R.C. 121.22(I) in 1994. R.C. 121.22(I) now clearly sets forth the test to be applied in determining whether attorney fees should be reduced or denied, and it is this test that courts must now follow.

*Id.* at ¶ 111. The court therefore reversed the case and remanded for consideration of the proper test. *Id.* at ¶ 112 and ¶ 169.

{¶ 71} Consequently, the standard is not how many violations exist or how "egregious" they are, nor is an attorney award contingent on the extent to which the action benefits the public.

{¶ 72} Based on the preceding discussion, we conclude that the trial court erred in

refusing to award attorney fees. Accordingly, the Second Assignment of Error is sustained, and this cause will be remanded for a determination of reasonable fees to be awarded to Jones.

IV.   The Board's Cross-Assignment of Error

**{¶ 73}** The Board's Cross-Assignment of Error states that:

> The Trial Court Erred in Awarding Jones Salary "Increments" Based on Compensation Benefits That the Board Never Authorized for the 2016-2017 School Year (12/13/19 Amended Entry, pgs. 4-6).

**{¶ 74}** Under this cross-assignment of error, the Board contends that the trial court erred when it included additional amounts to be paid to Jones in connection with his reemployment by operation of law under R.C. 3313.22(A).

**{¶ 75}** As noted above, the magistrate concluded that Jones was entitled only to the amount of one year of his base salary ($132,000) and the corresponding standard 14% contribution to SERS, for a total, after setoffs, of $42,345.78. After Jones objected, the trial court held that Jones was entitled to recover for his base salary, a $19,200 annuity, and $39,916.80 in SERS contributions. After applying setoffs, the court granted Jones a total of $82,482.58. Amended Entry at p. 5-6.

**{¶ 76}** The additional $39,916.80 in SERS contributions consisted of amounts specified in the employment contract, which required the Board to pay to SERS a 15.4% employer contribution rate and an extra 11% of Jones's compensation (for a total of 26.4%). This was known as a "pickup" and "pickup on pickup."[6]   The court applied this

---

[6] According to the Board, " 'Pickup' occurs when a board agrees to pay an employee's

percentage to the total of Jones's salary and annuity ($151,200), which resulted in the $39,916.80 SERS contribution amount.

{¶ 77} The relevant part of R.C. 3313.22(A) states that, "[a]t the expiration of a treasurer's current term of employment, the treasurer is deemed re-employed for a term of one year at the same salary plus any increments that the board may authorize * * *." The dispute here is over the meaning of "increments."

{¶ 78} According to the Board, the use of the word "increment" relates to Jones's salary only and does not include the annuity or the additional SERS contributions covered by the employment contract. The Board agrees that it should pay the standard 14% of Jones's salary to SERS. This would be the amount the magistrate found to be due after setoff: $42,345.78. In contrast, Jones contends that he is required to be made whole, which would be consistent with the amount, after setoff that the trial court ordered: $82,482.58.

{¶ 79} Per our above discussion of statutory analysis, "[t]o discern legislative intent, we first consider the statutory language, reading the words and phrases in context, according to rules of grammar and common usage." *Armstrong*, 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, at ¶ 12.

{¶ 80} Before we address this issue, we note that the parties do not dispute that 14% is the standard employer contribution to SERS. By law, the Board would have been required to remit this amount to SERS for the one-year period that Jones was reemployed

---

SERS contributions. Because the board has agreed to pay additional compensation (i.e., 'pickup'), the employee then has the option of paying an additional employee contribution of 10% of the 'pickup' amount. 'Pickup on pickup' occurs when a board also agrees to pay the additional employee contribution." Board Motion for Summary Judgment, p. 4, fn.1.

by operation of law. *See* R.C. 3309.49 and R.C. 3309.51. Because the Board had no choice in the matter, the standard 14% employer contribution the Board (and the part of the trial court award on which both parties agree) does not factor into our consideration of what is required under R.C. 3313.22(A).

{¶ 81} Returning to R.C. 3313.22(A), the common definition of "increment" is "1: the amount or degree by which something changes especially: the amount of positive or negative change in the value of one or more of a set of variables." *Merriam-Webster Online*, available at https://www.merriam-webster.com/dictionary/increment (accessed Aug. 19, 2020). The fact that the statute uses this term in connection with "salary" indicates that the legislature intended to limit recovery to items associated with a positive or negative change in salary, i.e., matters like cost of living increases or the like. There is no way that the annuity and additional SERS contributions can be classified as an increment.

{¶ 82} Even if we were required to consider matters other than the common meaning of the words in the statute, the word "increment" is used in other statutes in the educational field. As an example, R.C. 3319.11, which pertains to both continuing and limited teaching contracts, states in R.C. 3319.11(B)(1) and (2) that "[i]f * * *the board does not give the teacher written notice on or before the first day of June of its intention not to reemploy the teacher, the teacher is deemed reemployed under an extended limited contract for a term not to exceed one year at the same salary plus any increment provided by the salary schedule."

{¶ 83} Under R.C. 3317.14, "[a]ny school district board of education * * * participating in funds distributed under Chapter 3317 of the Revised Code shall annually

adopt a teachers' salary schedule with provision for *increments based upon training and years of service.*" (Emphasis added.) Consistent with the common meaning of increment, this indicates additional monetary increases to a teacher's salary, not additional benefits like annuities.

{¶ 84} Unlike a situation in which a school district has a stated salary schedule with increases based on years of service, negotiated contracts like the one here would not have a continuing salary schedule. This is probably why the term "provided by the salary schedule" was not included in R.C. 3313.22(A). Nonetheless, the application of the word "increment" is consistent, and there is no basis for including the annuity or the additional SERS contributions as part of Jones's damages.

{¶ 85} In support of his contention that the trial court's decision on damages should be affirmed, Jones relies on *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298. In that case, the court did say that "[t]he purpose of a back-pay award is to make the wrongfully terminated employee whole and to place that employee in the position the employee would have been in absent a violation of the employment contract." *Id.* at ¶ 26. *Stacy* is not relevant, however, as it involved wrongful termination of a non-teaching employee who had a continuing contract under R.C. 3319.081. In the case before us, the Board did not terminate Jones, nor did it violate the terms of his contract. Instead, the Board's attempt to nonrenew under R.C. 3313.22(A) was invalidated by the Board's violation of R.C. 121.22(F). The remedy for that violation was reemployment of Jones by operation of law for a period of one year, and the terms of his recovery were limited by R.C. 3313.22(A).

{¶ 86} The magistrate in this case correctly concluded that Jones was entitled to

his salary and the Board's 14% contribution to SERS, which after offset was $42,345.78. As a result, the trial court erred in sustaining Jones's objections and in awarding Jones $82,482.58. Accordingly, the Board's sole cross-assignment of error is sustained, and this cause will be remanded to the trial court for further proceedings consistent with this opinion.

## V. Conclusion

**{¶ 87}** Jones's First Assignment of Error is overruled, Jones's Second Assignments of Error is sustained, and the Board's sole cross-assignment of error is sustained. The judgment of the trial court, therefore, is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., concurs in part and dissents in part:

**{¶ 88}** I concur with my colleagues with regard to the analysis and disposition overruling the first assignment of error, arguing for serial statutory contract renewal until a non-renewal notice is issued, and sustaining the cross-assignment of error, regarding the awarding of additional benefits not included in the "increments" of salary contemplated by the applicable statute.

**{¶ 89}** I disagree, however, with the conclusion that the trial court abused its discretion by failing to award Jones attorney fees, and I therefore dissent, in part.

**{¶ 90}** As the majority points out, we review the trial court's decision regarding

attorney fees for an abuse of discretion. *Maddox,* 2014-Ohio-2312, 12 N.E.3d 476, at ¶ 53. Abuse of discretion review "is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 91} The two statutory prongs that must be found by a court to deny an award of attorney fees were that "a well-informed public body reasonably would believe that the public body was not violating" the statute and that "a well-informed public body reasonably would believe that the conduct * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct." R.C. 121.22(I)(2)(a)(i) & (ii). Concerning the first prong, the court concluded that based on then-existing law, the board believed that it was not violating the law when it issued the February 11, 2016 special meeting notice. Amended Entry at p. 8. The court made the same finding concerning public policy, reasoning that if the Board believed the notice was proper, the conclusion would inevitably follow that the Board also believed it was serving public policy when it issued the notice. *Id.*

{¶ 92} After reviewing the record and applicable law, I cannot find that the trial court's decision was based on unsound reasoning or was otherwise arbitrary or capricious. Concerning the first prong, our prior opinion admittedly disagreed with the trial court's initial summary judgment decision, and did so by distinguishing a case the Board and trial court had cited. *See Jones*, 2018-Ohio-676, 96 N.E.3d 333, at ¶ 52-56, discussing *Warthman v. Genoa Twp. Bd. of Trustees*, 5th Dist. Delaware No. 10CAH040034, 2011-Ohio-1775. However, reasonable minds may differ with respect to our interpretation of that case.

{¶ 93} Moreover, in the previous case we determined that the meeting notice did comply with R.C. 121.22(G)(1) "by specifying that the board would go into executive session to consider employment of public employees." *Id.* at ¶ 48. Indeed, that was, in part, the purpose of the meeting, employment of public employees. Notably, when considering employment of public employees, the notice "need not include the name of any person to be considered at the meeting." R.C. 121.22(G)(1). So, if the Board would be required to state in the meeting notice that upon returning to general session it may act on non-renewal of the contract of the Treasurer, such a requirement would be contrary to the non-disclosure of the name of the employee being discussed in executive session. And, a well-informed board would reasonably conclude that it could act in open session on the employment matter that was addressed in executive session. In view of this fact and the existing case law, the Board, as "a well-informed public body reasonably would believe" that it was not violating or threatening to violate R.C. 121.22.

{¶ 94} I consider the violation of R.C. 121.22(F) that we found in *Jones* to be a technical violation that we recognized after significant dispute and legal argument and after differing judicial conclusions. A well-informed board need not be held to recognize nuanced legal scholarship. On this record, I am unable to conclude that the trial court abused its discretion by refusing to award attorney fees. Accordingly, I would overrule Jones's second assignment of error regarding the denial of attorney fees.

Copies sent to:

Dennis L. Pergram

Brian L. Wildermuth
Lauren K. Epperley
Hon. Steven K. Dankof